STATE OF CONNECTICUT v. WILLIE HENDERSON
(7944)

DALY, LANDAU and CRETELLA, Js.

Argued December 6, 1990—decision released March 26, 1991

*Vicki H. Hutchinson,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Warren Maxwell,* senior assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals from judgments of conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 and burglary in the third degree in violation of General Statutes § 53a-103. The defendant's sole claim is that the trial court improperly admitted into evidence testimony and comments concerning his postarrest silence. Since this claim had not been preserved by the defendant at trial, we will test its reviewability under the four articulated conditions as set forth in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Although the record is adequate to review the alleged claim and although it is of constitutional magnitude alleging a violation of a fundamental right, we conclude that the alleged violation does not clearly exist and that the defendant was not deprived of a fair trial. We therefore affirm the judgments of the trial court.

The jury could have reasonably found that on August 28, 1987, the victim was living in a three-family house that was owned by her mother. She resided on the first floor of that house with her five children and her brother. In the early morning hours, she was sleeping with two of her children in one of the bedrooms. When she fell asleep, the television in that room was on. She was awakened by the defendant who had entered through her broken back door and had placed a gun to her head. The room was dark because the television had been unplugged. She was ordered to get out of bed, to disrobe and then, under threat of bodily harm, she was sexually attacked. Before leaving, the

defendant plugged in the television set for lighting so that he could see the victim's face and, in turn, the victim had the opportunity to look at the defendant. While the defendant was attempting to escape, the victim's brother and two of her sons were awakened. They chased the defendant outside of the house, finally catching him in a neighbor's backyard two houses away. In the ensuing struggle, one of the sons knocked the defendant unconscious when he hit him in the head with a toy wagon. The police arrived in a few minutes, took the defendant into custody and thereafter found a toy gun and a knife in the victim's bedroom.

That morning, while the victim was at the police station giving a statement to the police, she was shown several photographs including one of the defendant that she positively identified as being of the person who had sexually assaulted her. She also made an in-court identification of the defendant during the trial.

The defendant, who took the stand on his own behalf, denied having entered the victim's residence or having had any sexual relations with her. On cross-examination, the state asked the defendant if, while he was in police custody, he had stated that he had no recollection of what he was doing on the night in question. Instead of replying with a simple yes or no, the defendant replied, "I gave the detective no statement." There was no objection made to the state's question nor any motion to strike the defendant's response and no further questions were asked of the defendant.

In rebuttal, the state called Detective Ronald Faggaini, who had spoken with the defendant at police headquarters on the evening in question. He testified that the defendant, after he had been advised of his rights pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), stated to him "that he did not remember what he did that morning

and that he had nothing to say." The defendant again made no objection to this testimony, nor did he make any motion to strike it.

The question to be decided is whether the defendant's claim involves the use of a prior inconsistent statement to impeach his credibility or an invasion of postarrest silence as is prohibited under *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). If it involves an invasion of the defendant's right to remain silent after custodial inquiry has been completed, it would be a constitutional violation. It is not a constitutional violation, however, if it involves only the state's efforts to impeach the credibility of the defendant. If, after he has been advised of his rights pursuant to *Miranda,* a defendant gives any statement to the police, that statement may be used to impeach his credibility, as the prosecutor did here when the defendant chose to testify at trial to a different exculpatory version of the events that transpired. See *State* v. *Apostle,* 8 Conn. App. 216, 223, 512 A.2d 947 (1986).

The defendant's reliance on *Doyle* to support his argument that his due process rights and his right against compelled self-incrimination were violated is misplaced. In *Doyle,* the United States Supreme Court held that the prosecutor's attempt to impeach the defendant's trial testimony by commenting on the defendant's failure to speak after being given *Miranda* warnings was a violation of due process. Although *Doyle* bars the use of a criminal defendant's silence after receiving *Miranda* warnings, it does not apply to cross-examination that inquires into prior inconsistent statements of the defendant. Such cross-examination, as was undertaken here, is not making unfair use of silence but is solely for the purpose of impeaching the defendant's credibility. See *State* v. *Reed,* 193 Conn. 646, 652–53, 480 A.2d 463 (1984).

"There is no doubt that the use of a statement made after *Miranda* warnings have been given, relating to the facts of the crime with which the defendant is charged, may be used to impeach his credibility by illustrating inconsistencies between that statement and a different exculpatory statement given during his in-court testimony." *State* v. *Apostle,* supra, 222. Cases involving *Doyle* silence are concerned only with custodial interrogation and their focus is on the period immediately following the defendant's receipt of *Miranda* warnings. *State* v. *Apostle,* supra, 233. It is constitutionally permissible to delve into a defendant's prior inconsistent statement and to inquire about the reason for the inconsistency. The principles of *Doyle,* therefore, are not applicable to anything the defendant told the police about the facts of the crime and the state could properly question the defendant and comment about them.

During his direct testimony, the defendant testified in detail to his actions during the late evening of August 27 and the early morning hours of August 28. The state had information that after being taken into custody and given his *Miranda* rights, the defendant had allegedly told Faggaini that he did not remember what he had done that morning. On cross-examination, the state was clearly within its rights to impeach the defendant's credibility and asked only one question: "Mr. Henderson, on the 28th of August 1987 when you were in police custody did you tell the Hartford police detective that you had no recollection whatsoever of what you were doing that night?" It was to that question that the defendant replied "I gave the detective no statement." No further questions were then asked of the defendant. On rebuttal, it was proper for the state to continue with the impeachment process by asking the detective what the defendant had stated at the police station.

During his closing argument, the prosecutor's remarks were for the sole purpose of pointing up the attempted impeachment of the defendant's testimony. They were neither improper nor violative of the defendant's constitutional rights against self-incrimination.

The judgments are affirmed.

In this opinion the other judges concurred.