STATE OF CONNECTICUT *v.* JOSE DANIEL PAULINO
(9426)

DALY, O'CONNELL and NORCOTT, Js.

Argued September 11—decision released October 29, 1991

*Neal Cone,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of possessing cocaine with intent to sell in violation of General Statutes § 21a-278 (b).[1] The defendant was sentenced to twenty years in prison. He claims that the trial court improperly admitted inculpatory hear-

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

say statements made by a third party, and improperly permitted unfairly prejudicial testimony by a prosecution witness, thereby denying him his federal and state constitutional rights to due process. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On May 3, 1989, shortly before 8 p.m., a 1978 Oldsmobile with two males, including the defendant, in the front seat, and a woman and a baby in the rear seat, passed an unmarked state police car on Interstate 95 in the Fairfield area at a speed of more than seventy miles per hour. State Trooper John Rodia gave chase in the unmarked car and radioed to his supervisor, Sergeant Robert Kenney, that he was doing so. Kenney, parked at a service area on Interstate 95, also saw the Oldsmobile drive past. He later identified the defendant as the passenger in the front seat.

Near exit 25, with Rodia about two car lengths behind and traveling at about eighty miles per hour, the front seat passenger in the Oldsmobile reached to his left, then swung his arm to the right, and threw a bag out the passenger side window. The bag landed near the guardrail alongside the highway. The Oldsmobile then left the highway on exit 25 and came to a stop after hitting a post near the exit ramp. When Rodia attempted to follow the Oldsmobile off exit 25, he lost control of his car, which left the ramp airborne, rolled over and went down an embankment. Rodia left the car and proceeded on foot back onto Interstate 95, where he retrieved the bag. Inside it was a brick-like package wrapped in tape, which a state toxicologist later identified at trial as a white powder that weighed one kilogram and contained 85 percent pure cocaine. The toxicologist testified that the cocaine could have been broken down for sale into ten thousand bags of the drug. Other state troopers, including Trooper Edward Alicea, also went to the accident scene, where the

defendant was apprehended along with Pedro Navarro. At the state police barracks, they were given their *Miranda*[2] warnings and interviewed separately by Alicea, who is fluent in Spanish.

The defendant told Alicea that he was a passenger in the Oldsmobile. He then invoked his right to counsel, and the discussion ceased. Shortly thereafter, the defendant was placed in a holding cell adjacent to Navarro. As Alicea was leaving, he overheard the defendant ask Navarro if Navarro had told the police anything. Alicea also heard the defendant tell Navarro that the defendant hoped Navarro did not tell the police anything. When Alicea interviewed Navarro, Navarro initially claimed neither he nor the defendant was the driver of the car but that it had been driven by a third male. He then admitted to lying about the third male. He also told Alicea that he was traveling to Providence, Rhode Island, to look for work, that he had never been arrested and had always been employed, and that he had known there were drugs in the Oldsmobile but had nothing to do with them. Navarro also told Alicea that the package containing the cocaine belonged to the defendant.

As a result of Navarro's statements to Alicea, the defendant filed a pretrial motion for severance, requesting that he and Navarro be tried separately. The trial court granted the defendant's motion.

I

The defendant first claims that the trial court abused its discretion by improperly admitting inculpatory hearsay statements made by Navarro to Alicea to the effect that the cocaine belonged to the defendant. We disagree.

---

[2] *Miranda* v. *Arizona,* 384 U.S. 436, 467–73, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

During cross-examination, Alicea testified that Navarro had denied being the car's driver. On redirect, the prosecution first elicited that the defendant, too, had denied being the driver, then proceeded to ask about ownership of the cocaine. Prior to Alicea's testimony and outside the presence of the jury, the court had ruled that if defense counsel inquired as to Navarro's statement that he was not the driver, the rest of his statement might be permitted to come in as well. Defense counsel told the court that he understood its ruling.

In his brief, the defendant concedes that he "opened the door" by asking about who was driving, but claims that he did not open it so wide as to permit inquiry about ownership of the cocaine. "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. . . . This rule 'operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context.' " (Citations omitted.) *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986). Once the door has been opened, the trial court must then engage in a balancing test of sorts in determining whether further inquiry by the opposing party is proper to allow it to undo any unfair prejudice that may have resulted from the original testimony. Id., 14. A trial court is charged with the responsibility to exclude evidence where its prejudicial

tendency outweighs its probative value. *State* v. *Geyer,* 194 Conn. 1, 11, 480 A.2d 489 (1984); *State* v. *Nardini,* 187 Conn. 513, 521–22, 447 A.2d 396 (1982). A defendant who opens the door on cross-examination, however, cannot complain when the opposing party on redirect elicits from the witness highly prejudicial hearsay statements made by a third party. *State* v. *Crowley,* 22 Conn. App. 557, 561–62, 578 A.2d 157, cert. denied, 216 Conn. 816, 580 A.2d 62 (1990); *State* v. *Aleksiewicz,* 20 Conn. App. 643, 655–56, 569 A.2d 567 (1990).

Applying these principles, we conclude that the trial court properly permitted the prosecution to elicit testimony from Alicea as to ownership of the cocaine. To disallow introduction of this evidence would have greatly prejudiced the prosecution by permitting the defendant to make selective use of Navarro's statements so as to create for the jury the erroneous impression that Navarro, who as the passenger had thrown the package from the vehicle, was exculpating the defendant. Introduction of this evidence was thus essential to cure the unfairness that resulted from defense counsel's limited inquiry.

The defendant also asserts that the trial court's decision to permit testimony as to ownership of the cocaine was fundamentally unfair and therefore deprived him of his rights to due process and a fair trial. Properly viewed, the defendant's claim challenges the trial court's decision on evidentiary grounds only. *State* v. *Castonguay,* 218 Conn. 486, 497, 590 A.2d 901 (1991). Because a trial court's ruling on such grounds is accorded great deference, we will reverse such a ruling only in cases manifesting an abuse of discretion and resulting in substantial prejudice or injustice to the defendant. Id., citing *State* v. *Hernandez,* 204 Conn. 377, 390, 528 A.2d 794 (1987); *State* v. *Martin,* 170

Conn. 161, 166, 365 A.2d 104 (1976); see also *State* v. *Sanchez,* 25 Conn. App. 21, 24, 592 A.2d 413 (1991). In reviewing claims that the trial court abused its discretion, "the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness; the ultimate issue is whether the court could reasonably conclude as it did . . . ." *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979). On the basis of our review, we cannot say the trial court abused its discretion in permitting the prosecution to elicit testimony as to ownership of the cocaine.

## II

The defendant next claims that he was denied a fair trial because the trial court improperly permitted testimony by Alicea identifying the defendant as having worn a bag over his head at a pretrial hearing. None of the defendant's objections at trial, however, may be fairly seen as addressing this specific issue. The defendant's counsel twice requested the court to direct the witness to respond a certain way. Counsel's final objection went to the prosecution's line of questioning itself. Because this claim was never raised properly in the trial court, we decline to review it now. *State* v. *Dennison,* 24 Conn. App. 27, 30–31, 585 A.2d 1240, cert. granted, 219 Conn. 901, 593 A.2d 131 (1991); *State* v. *Burroughs,* 22 Conn. App. 507, 511–12, 578 A.2d 146 (1990).

"To review evidentiary claims, a defendant must strictly comply with the rule of Practice Book § 288 requiring the statement of grounds for each objection. *Skinner* v. *Skinner,* 154 Conn. 107, 110, 221 A.2d 848 (1966). Because the basis of the defendant's claim differs from the ground of his objection at trial, it cannot be the basis for concluding reversible error. *Birgel* v. *Heintz,* 163 Conn. 23, 35–36, 301 A.2d 249 (1972). On appeal, 'review of evidentiary rulings made

by the trial court is limited to the specific legal ground raised in the objection. . . . The reason for this rule is clear: it is to alert the trial court to an error while there is time to correct it . . . and to give the opposing party an opportunity to argue against the objection at trial. To permit a party to raise a different ground on appeal than was raised during trial would amount to "trial by ambuscade," unfair to both the trial court and to the opposing party.' (Citations omitted.) *State* v. *Sinclair,* 197 Conn. 574, 579, 500 A.2d 539 (1985)." *State* v. *Burroughs,* supra, 511. Moreover, there can be no finding of a denial of a fair trial on this basis since ample evidence was elicited at trial from numerous witnesses as to the identity of the defendant.

## III

Finally, the defendant claims that the trial court improperly allowed Alicea to testify as to statements the trooper overheard the defendant make to Navarro in the holding cells after the defendant had invoked his right to remain silent. We disagree.

The defendant argues that Alicea's testimony violated the rule that use of a defendant's silence after he has received *Miranda* warnings violates due process. *Doyle* v. *Ohio,* 426 U.S. 610, 619, 96 S. Ct. 2240, 48 L. Ed. 2d 91 (1976); *Anderson* v. *Charles,* 447 U.S. 404, 407–408, 100 S. Ct. 2180, 65 L. Ed. 2d 222 (1980); *State* v. *Casey,* 201 Conn. 174, 184, 513 A.2d 1183 (1986). *Doyle* applies, however, only to cases involving "custodial interrogation and their focus is on the period immediately following the defendant's receipt of *Miranda* warnings." *State* v. *Henderson,* 24 Conn. App. 295, 299, 588 A.2d 224 (1991); see also *State* v. *Apostle,* 8 Conn. App. 216, 233, 512 A.2d 947 (1986). " '[I]nterrogation' under *Miranda* refers both to express questioning [and] to any words or actions on the part of the police . . .

that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State* v. *Vitale,* 197 Conn. 396, 411-12, 497 A.2d 956 (1985), quoting *Rhode Island* v. *Innis,* 446 U.S. 291, 301-302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). A statement freely given, not elicited through interrogation and without any compelling influence, is admissible. *State* v. *Copeland,* 205 Conn. 201, 207, 530 A.2d 603 (1987); *State* v. *Burak,* 201 Conn. 517, 531, 518 A.2d 639 (1986); *State* v. *Vitale,* supra, 412.

Here, there was no custodial interrogation involved in the cell block. Alicea did not speak with the defendant there; he merely overheard the defendant freely and voluntarily asking Navarro questions.

The judgment is affirmed.

In this opinion the other judges concurred.