# STATE OF CONNECTICUT *v.* JOSE DANIEL PAULINO (14449)

CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued June 10—decision released August 12, 1992

*Neal Cone,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Jose Daniel Paulino, was convicted of the crime of possession of cocaine with the intent to sell in violation of General Statutes § 21a-278 (b).[1] He was sentenced to a term of imprisonment of twenty years. Thereafter, he appealed to the Appellate Court, which affirmed the judgment of the trial court. *State* v. *Paulino,* 26 Conn. App. 86, 598 A.2d 666 (1991). We granted the defendant certification to appeal to this court. We affirm the judgment of the Appellate Court.

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

The Appellate Court accurately concluded that the jury could reasonably have found the following facts. "On May 3, 1989, shortly before 8 p.m., a 1978 Oldsmobile with two males, including the defendant, in the front seat, and a woman and a baby in the rear seat, passed an unmarked state police car on Interstate 95 in the Fairfield area at a speed of more than seventy miles per hour. State Trooper John Rodia gave chase in the unmarked car and radioed to his supervisor, Sergeant Robert Kenney, that he was doing so. Kenney, parked at a service area on Interstate 95, also saw the Oldsmobile drive past. He later identified the defendant as the passenger in the front seat.

"Near exit 25, with Rodia about two car lengths behind and traveling at about eighty miles per hour, the front seat passenger in the Oldsmobile reached to his left, then swung his arm to the right, and threw a bag out the passenger side window. The bag landed near the guardrail alongside the highway. The Oldsmobile then left the highway on exit 25 and came to a stop after hitting a post near the exit ramp. When Rodia attempted to follow the Oldsmobile off exit 25, he lost control of his car, which left the ramp airborne, rolled over and went down an embankment. Rodia left the car and proceeded on foot back onto Interstate 95, where he retrieved the bag. Inside it was a brick-like package wrapped in tape, which a state toxicologist later identified at trial as a white powder that weighed one kilogram and contained 85 percent pure cocaine. The toxicologist testified that the cocaine could have been broken down for sale into ten thousand bags of the drug. Other state troopers, including Trooper Edward Alicea, also went to the accident scene, where the defendant was apprehended along with Pedro Navarro. At the state police barracks, the defendant and Navarro were given their *Miranda*[2] warnings and

---

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 467–73, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

interviewed separately by Alicea, who is fluent in Spanish.

"The defendant told Alicea that he was a passenger in the Oldsmobile. He then invoked his right to counsel, and the discussion ceased. Shortly thereafter, the defendant was placed in a holding cell adjacent to Navarro. As Alicea was leaving, he overheard the defendant ask Navarro if Navarro had told the police anything. Alicea also heard the defendant tell Navarro that the defendant hoped Navarro did not tell the police anything. When Alicea interviewed Navarro, Navarro initially claimed that neither he nor the defendant was the driver of the car but that it had been driven by a third male. He then admitted to lying about the third male. He also told Alicea that he was traveling to Providence, Rhode Island, to look for work, that he had never been arrested and had always been employed, and that he had known there were drugs in the Oldsmobile but had nothing to do with them. Navarro also told Alicea that the package containing the cocaine belonged to the defendant." *State* v. *Paulino,* supra, 26 Conn. App. 88–89.

Following his conviction, the defendant appealed to the Appellate Court claiming that: (1) "the trial court erred in admitting hearsay statements purportedly made by [Navarro] which inculpated [the defendant]"; (2) "the trial court [erred] in allowing unfairly prejudicial reference by the state to [the] defendant's garb at a prior proceeding"; and (3) his "due process rights were violated by reference to his invocation of his right to silence." The Appellate Court affirmed the judgment of the trial court and the defendant petitioned this court for certification to appeal from the decision of the Appellate Court. We granted his petition for certification; *State* v. *Paulino,* 221 Conn. 907, 600 A.2d 1362 (1992); limited to the following questions: "1. (a) Whether the Appellate Court correctly decided that it

was not an abuse of discretion [to admit] inculpatory hearsay statements made by a nontestifying co-arrestee that the cocaine seized belonged to the defendant? (b) Whether the Appellate Court was correct in seeing no constitutional implications in the admission of such statements? 2. (a) Whether the Appellate Court correctly decided that the basis of the defendant's claim of error on appeal as to the admission of testimony referring to the defendant having worn a paper bag over his head at a pretrial proceeding was based upon a different ground than trial counsel's objections at trial? (b) Whether the Appellate Court gave proper consideration to the defendant's claim on appeal that the admission of such testimony, in the context of the entire proceedings below, violated fundamental fairness?"

## I

The first certified question is composed of two parts. It asks: (1) whether the Appellate Court correctly decided that the trial court acted within its discretion in admitting inculpatory hearsay statements made by a nontestifying coarrestee; and (2) whether the Appellate Court correctly determined that such a claim raised no constitutional issues. We conclude that the Appellate Court was correct.

At trial, the state called Alicea to testify. Although Alicea had interviewed Navarro, the state, in its direct examination, did not ask Alicea to testify regarding that interview. During the defendant's cross-examination of Alicea, however, the defendant elicited the fact that Alicea had interviewed Navarro. The defendant then proceeded to ask Alicea whether Navarro had stated that he had been the passenger in the Oldsmobile. The state objected to the defendant's question, asserting that it called for a hearsay response. The defendant, citing *State* v. *Gold,* 180 Conn. 619, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148

(1980), argued that, even if the question had called for hearsay, he was entitled to ask it because Navarro's statement tended to prove that Navarro, and not the defendant, had possessed the cocaine. The state argued that if the defendant were allowed to ask Alicea whether Navarro had stated that he had been the passenger in order to allow the jury to draw an inference of possession, it should be entitled to introduce other portions of Navarro's statement to the police. The trial court ruled that the defendant would be allowed to ask the question, but that, if the question were asked, the state might be permitted to introduce the entire statement.[3] The defendant informed the trial court that he wished to ask the question, and the trial court stated: "When you ask him the question, you understand [that] the implications . . . [may be] that the whole statement will come in." The defendant replied that he understood the court's ruling and that he objected to it.

The defendant proceeded to elicit from Alicea the fact that, on the evening of May 3, 1989, Navarro had told Alicea that he had not been the driver of the Oldsmobile. In response to questioning by the state on redirect examination, Alicea testified that, in the course of that May 3, 1989 interview, Navarro had also stated that the drugs in the car belonged to the defendant and not to him. The defendant objected to the state's question, and his objection was overruled.

A

We first address the question of whether the Appellate Court correctly concluded that the trial court acted within its discretion in admitting Navarro's statement that the cocaine belonged to the defendant.

---

[3] The trial court stated: "If this goes in, I'm going to allow it; then other portions of that statement may come in. The statements that were kept out yesterday will not come in. But this — it [may be] that this whole statement will come in if this question is allowed which I will allow if you ask it. I want you to be forewarned."

"Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein. *State* v. *Cruz,* 212 Conn. 351, 356, 562 A.2d 1071 (1989)." *State* v. *Rinaldi,* 220 Conn. 345, 359, 599 A.2d 1 (1991). Ordinarily, hearsay is not admissible, and the state concedes on appeal, as it did at trial, that Navarro's statement that the cocaine belonged to the defendant was hearsay. It argues, however, that the defendant "opened the door" to the admission of the evidence.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. *State* v. *Roy,* 173 Conn. 35, 50, 376 A.2d 391 (1977); McCormick, Evidence (3d Ed. 1984) §§ 32, 57. The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence. *United States* v. *Winston,* 447 F.2d 1236, 1240–41 (D.C. Cir. 1971); *State* v. *Glenn,* 194 Conn. 483, 499, 481 A.2d 741 (1984); *State* v. *Roy,* supra; McCormick, supra, § 57." *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986); see *State* v. *Williams,* 220 Conn. 385, 393, 599 A.2d 1053 (1991). In *State* v. *Graham,* supra, we stated that " '[t]his rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context.' *United States* v. *Lum,* 466 F. Sup. 328, 334 (D. Del. 1979)." See C. McCormick, supra, § 56.

In determining whether otherwise inadmissible evidence should be admitted to rebut evidence offered by an opposing party, the "trial court must carefully con-

sider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence . . . ." (Citations omitted; internal quotation marks omitted.) Id., 14. Accordingly, the trial court should "balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal. *United States* v. *Winston,* [supra, 1241–42]; *People* v. *Arends,* 155 Cal. App. 2d 496, 509, 318 P.2d 532 (1957)." Id. We will not overturn the trial court's decision unless the trial court has abused its discretion. *State* v. *Jones,* 205 Conn. 638, 666–67, 534 A.2d 1199 (1987).

The defendant claims that the prejudice caused to him by the introduction of Navarro's statement that the cocaine belonged to the defendant outweighed any legitimate benefit to the state in rebutting Navarro's statement that he had been the passenger in the vehicle. We agree with the Appellate Court that the trial court did not abuse its discretion in allowing the state to introduce Navarro's statement.

The evidence at trial indicated that the passenger in the Oldsmobile had thrown the cocaine from the vehicle. The defendant offered Navarro's hearsay statement that Navarro was the passenger on the basis that that statement indicated that Navarro, and not the defendant, was the person who had possessed the cocaine. We agree that it would have been reasonable for the jury to have inferred that the cocaine had belonged to the person who had discarded it, and that Navarro's statement that he was the passenger indicated that the cocaine had belonged to him. In order to show otherwise, the state offered Navarro's statement, made contemporaneously in the same interview as the statement introduced by the defendant, that the drugs had belonged to the defendant. That statement,

although hearsay, directly contradicted the obvious inference that the drugs had been Navarro's, that had been raised by the segment of Navarro's statement introduced by the defendant. Furthermore, the defendant was explicitly apprised that the state would be allowed to introduce portions, if not all, of the interview between Alicea and Navarro if the defendant insisted upon introducing Navarro's favorable hearsay statement. Viewing the totality of the circumstances, the trial court could reasonably have concluded that the statement offered by the state was necessary to place the previously offered portion of Navarro's statement in its proper context. Accordingly, we conclude that the Appellate Court correctly determined that the trial court had acted within its discretion in admitting the statement offered by the state.

## B

We next address the question of whether the Appellate Court correctly concluded that the defendant's claim that Navarro's statement was improperly admitted failed to assert a constitutional violation. We conclude that the Appellate Court was correct.

The defendant asserts that the introduction of Navarro's hearsay statement that the cocaine belonged to the defendant violated his right to confront the witnesses against him as provided by the sixth amendment to the United States constitution.[4] Specifically, the defendant claims that Navarro's statement was inculpatory and, being hearsay, provided him with no opportunity to cross-examine Navarro.

We conclude, however, that, because this particular evidence was properly admitted, there was no impermissible violation of the defendant's constitutional right

[4] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

to confrontation. See *Sanville* v. *State,* 593 P.2d 1340, 1344 (Wyo. 1979). "[T]he crucial question under the confrontation clause is not compliance with common law hearsay rules, but fulfillment of the 'mission of the confrontation clause to advance the accuracy of the truth determining process . . . by assuring that the trier of fact has a satisfactory basis for evaluating the truth of a prior statement.' " W. LaFave & J. Israel, Criminal Procedure § 23.3 (d), p. 16, citing *California* v. *Green,* 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). In circumstances where the defendant has introduced an exculpatory hearsay statement, we do not believe that the confrontation clause bars the state from introducing, on rebuttal, a contemporaneous statement that directly contradicts the inference that the defendant desires that the jury draw from the exculpatory statement. Accordingly, we conclude that the Appellate Court correctly determined that the defendant's claim was not of constitutional magnitude but was an evidentiary question addressed to the trial court's discretion.

## II

The second certified question is also in two parts. The first part asks whether the Appellate Court correctly determined that the defendant's claim on appeal, that the trial court had improperly admitted testimony that the defendant had worn a bag over his head at a pretrial hearing, differed from his claim at trial. The second part asks whether the Appellate Court properly considered the defendant's claim that the introduction of that evidence violated fundamental fairness.

On February 28, 1990, at a pretrial hearing at which police witnesses were expected to appear, the trial court announced that defense counsel preferred that the defendant not be present at the hearing. The court stated that defense counsel had informed it that he

would prefer that the police identify his client at trial, in front of the jury, rather than at the hearing. Thereafter, defense counsel stated to the court that, alternatively, he had "custom fitted" a paper bag for the defendant to wear over his head so that the defendant could be present in the courtroom but could not be identified by the police witnesses. At that time, the state's attorney stated that he was not opposed to the defendant wearing a paper bag, but that he did not want to be precluded from arguing to a jury that such conduct was evidence of the defendant's consciousness of guilt. The defendant subsequently appeared at the pretrial hearing with a paper bag over his head hiding his facial features.

At trial, on March 26, 1990, the state announced that it would be calling Trooper Rodia to testify. To prevent Rodia from observing the defendant, defense counsel requested that the defendant be allowed to leave the courtroom while Rodia testified.[5] Following a waiver of the defendant's right to be present, the court allowed him to leave the room. Prior to the testimony of each of several other police officers at trial, the defendant requested to leave the courtroom. The state objected to that procedure, stating that it had a right to have its witnesses view the defendant for the purpose of establishing his identity. The trial court, however, each time allowed the defendant to exit the courtroom and stay in an adjoining room to listen to the testimony of the police officers.

Later that same day, the state moved the trial court to require the defendant to appear in court to be identified by the state's witnesses. The state commented that if it were unable to require the defendant to appear, it would argue that the defendant's actions

[5] It appears that the defendant was under the impression that he could not be required to appear at trial, and that he also believed that in his absence the state would have difficulty in establishing the element of identification.

demonstrated a consciousness of guilt. The trial court, however, warned the state several times not to attempt to make a consciousness of guilt argument. Instead, the trial court ordered that each party submit briefs on the following morning, March 27, 1990, regarding the issue of whether the defendant could be required to appear in court at trial for identification.

Following the above colloquy among the trial court and counsel, the state prepared to call Robert Kenney of the Connecticut state police to testify. Prior to Kenney's appearance, the state informed the trial court that it intended to ask Kenney if he recalled testifying at an earlier hearing where a person had been present wearing a bag over his head. The defendant objected, and asked that the court limit the state to asking whether the defendant "[absented] himself from the [earlier] proceeding." The trial court stated that it would allow the question as phrased because that was, in fact, what had occurred at the prior hearing. The defendant took exception to the court's ruling.

Subsequent to its ruling, the trial court asked the state to describe the context in which the state anticipated that it would ask the question about the paper bag. The state explained that it would need to demonstrate that the officer could identify the defendant as having been present at the scene of the crash near Interstate 95. The state suggested that it would ask the officer if he recalled the man at the scene, and whether that man looked similar physically to the man that had been present at the pretrial hearing with a bag over his head. The state commented that it was clear that the man wearing the bag over his head was the defendant because the court had so noted that fact. Accordingly, the state would have demonstrated that the officer was able to state that the defendant looked similar to the man at the scene. Such testimony, the

state averred, would be unnecessary if the defendant were to appear at trial, and the officer could identify him.

Thereafter, the trial court excused the jury and the state completed an offer of proof, eliciting the following testimony from Kenney. Kenney was present at a pretrial hearing and observed an individual seated at the defense table. Kenney also observed that the individual was wearing a paper bag over his head. Although Kenney could not see the person's face, he was able to observe his proportions, and Kenney believed that the person had similar proportions to those of the defendant, except that the individual at the hearing appeared to have been heavier.

Following the state's offer of proof, the defendant objected to the introduction of the proffered testimony stating, "he doesn't necessarily [need] to say he had a bag over his head. He [could] be asked for example in a question, have you seen him since; and it would be [a sufficient] question." The trial court overruled the defendant's objection, but, at the same time, it stated that it was leaning toward requiring the defendant to appear to be identified. In the presence of the jury, the state called Kenney to testify. Kenney then recounted that at a previous stage in the proceedings there had been an individual with a bag over his head who had been seated next to defense counsel. Kenney also testified that the individual with the bag over his head had similar proportions to those of the man he had observed at the scene near Interstate 95 on May 3, 1989.

On March 27, 1990, the day after Kenney commenced his testimony, the trial court announced that it would require the defendant to be present to be identified by the state's witnesses. Following the trial court's ruling, the defendant returned to the courtroom. The state recalled Kenney to testify, and Kenney identified the

defendant as the individual that he had observed in the passenger seat of the Oldsmobile on May 3, 1989.

On March 28, 1990, the defendant conducted his cross-examination of Alicea, who had interviewed the defendant on May 3, 1989. In the course of that cross-examination, the defendant attempted to challenge Alicea's ability to identify the defendant as the man that Alicea had interviewed on the day of the offense. The defendant elicited the fact that Alicea had been present at a prior hearing and that Alicea had observed the state's attorney, codefense counsel, and several others in the courtroom. Defense counsel then elicited that, subsequent to the day of the defendant's arrest, Alicea had not seen the defendant until March 27, 1990. On redirect examination, the state asked Alicea if he recalled the defense counsel asking him whether he remembered seeing several people at a prior hearing, and Alicea testified that he did recall the questions.[6] The state then asked if Alicea recalled that there had been another person seated beside defense counsel, and Alicea testified that he did. The state then asked Alicea to describe the person. The defendant objected to the line of questioning and the trial court overruled the objection.[7] Alicea responded that "[i]t's the person to the right of [defense counsel] had a bag over his head." The defendant did not object to Alicea's answer, which contained the reference to the bag, nor did he ask that the answer be stricken.

In his appeal to the Appellate Court, the defendant claimed that the trial court unfairly allowed the

---

[6] The state's attorney asked: "A couple of other questions were asked by [defense counsel] regarding your appearance at a previous time. And he went through touching myself and other members of the courtroom that are on this side of the room; and then asked you if the first time you saw Mr. Paulino, I believe was yesterday when you sat here in court. Do you remember [that] series of questions, Trooper Alicea?"

[7] Defense counsel stated only: "I would object to this line of questioning Your Honor."

introduction of testimony by both Alicea and Kenney regarding the fact that the defendant had worn a bag over his head because such testimony was highly prejudicial and had little probative value. Additionally, the defendant argued that the testimony was so prejudicial that its introduction had deprived him of his right to a fair trial. The Appellate Court, however, addressed the defendant's claim only with regard to Alicea's testimony and determined that the defendant's claims on appeal in regard to that testimony differed from those that he had raised at trial. Accordingly, it concluded that the propriety of Alicea's testimony regarding the paper bag was not reviewable. *State* v. *Paulino,* supra, 26 Conn. App. 92–93. The Appellate Court did not consider at all the defendant's claim that Kenney's testimony with regard to the paper bag was inadmissible, despite the fact that the issue was briefed and argued. Regarding the defendant's constitutional claim, the Appellate Court concluded that he was not denied a fair trial because "ample evidence was elicited at trial from numerous witnesses as to the identity of the defendant." Id., 93; see *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

A

We first address the question of whether the Appellate Court correctly decided that the defendant failed properly to preserve his evidentiary claims at trial. We will address the defendant's claims in this regard as they relate to the testimony of both Alicea and Kenney. Initially, our review of the transcript demonstrates that the Appellate Court properly concluded that the defendant's objection concerning the evidence introduced through Alicea was not sufficient to preserve his evidentiary claim that the testimony regarding the paper bag was more prejudicial than probative or that

it violated fundamental fairness.[8] We conclude, however, that the defendant adequately preserved his evidentiary claim that the testimony regarding the paper bag introduced through Kenney was more prejudicial than probative.

"Practice Book § 288 provides in pertinent part that '[w]henever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had.' Section 4185 provides in relevant part that the Supreme Court is not 'bound to consider a claim unless it was distinctly raised at the trial. . . .' We have noted that '[t]he purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction.' *State* v. *Utz,* 201 Conn. 190, 207, 513 A.2d 1191 (1986). This rule is essential to avoid trial by ambush [of the presiding judge and the opposing party]. *State* v. *King,* 216 Conn. 585, 590, 583 A.2d 896 (1990)." *State* v. *Dennison,* 220 Conn. 652, 657, 600 A.2d 1343 (1991).

The state argues that the defendant's objection was insufficient to preserve his claim as to Kenney's testimony because it failed to state distinctly the grounds upon which it was based. Our review of the transcript, however, demonstrates that the defendant clearly informed the trial court that he believed that any reference by Kenney to the paper bag was unnecessary and harmful. Although the defendant's objections regarding Kenney's testimony failed to incorporate the specific language that he now uses on appeal, the objections

---

[8] The defendant also claims that, despite his failure to preserve the fundamental fairness claim, he should prevail upon that claim under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We address that issue in part II B, infra.

"were succinct and adequately alerted the trial court to the basis of [his] objection. We conclude that the trial court and the state were fairly put on notice of the basis for the defendant's objections [to Kenney's testimony]; see *State* v. *Gonzales,* 186 Conn. 426, 433, 441 A.2d 852 (1982); and that . . . the defendant's claim [was] adequately preserved." Id., 659.

## B

Having determined that the defendant adequately preserved his claim that Kenney's testimony regarding the paper bag was more prejudicial than probative, we will address the merits of that claim. " '[T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court judge and is subject to reversal only where an abuse of discretion is manifest or injustice appears to have been done.' *State* v. *Braman,* 191 Conn. 670, 681–82, 469 A.2d 760 (1983); *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980)." *State* v. *Rinaldi,* 220 Conn. 345, 355, 599 A.2d 1 (1991).

We conclude that Kenney's testimony that he had observed the defendant wearing a paper bag over his head at a pretrial hearing was more prejudicial than it was probative, and that the trial court abused its discretion in admitting it into evidence. The only probative value that the evidence legitimately had was that it tended to bolster Kenney's identification of the defendant. In view of the fact that the defendant appeared in court and was positively and unequivocally identified by Kenney, the utility of the evidence for that purpose was minimal.[9] On the other hand, its poten-

---

[9] Although the defendant had not been present for Kenney to identify at the time that Kenney testified regarding the paper bag, that testimony was elicited by the state at the very end of the day and the state had previously moved to require the defendant's presence and was fully aware that the issue would be determined by the trial court the next morning. Furthermore, the trial court made it clear that it was leaning toward requir-

tial prejudice was substantial. Although the trial court observed, outside the presence of the jury, that the defendant had covered his face simply in order to require the police to identify him at trial, the jury, unaware of the defendant's reasoning, may have negatively viewed his attempt to avoid disclosure of his facial features. We believe that the jury may have regarded the defendant's conduct as suspicious and as a sign of guilt or shame, or as an attempt to frustrate the function of the court. In sum, the introduction of Kenney's testimony concerning the paper bag may have conjured up numerous unfounded, but, nevertheless, damaging impressions in the jurors' minds. In view of the meager utility of the evidence, it should not have been admitted.

## C

Although we conclude that Kenney's testimony was more prejudicial than probative and that the trial court abused its discretion, we also conclude that the error was harmless.

Because his claim is evidentiary and not constitutional, the defendant "bears the burden of establishing that the trial court's erroneous ruling was harmful to him in that it probably affected the outcome of the trial. *State* v. *Burak,* 201 Conn. 517, 527, 518 A.2d 639 (1986); *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985)." *State* v. *Dennison,* supra, 661. Our review of the transcript demonstrates that the state produced compelling evidence of the defendant's identity and guilt. Furthermore, although the testimony concerning the paper bag was introduced into evidence, neither the state nor the defendant made any mention of

ing the defendant to appear. In fact, on the morning after Kenney testified regarding the paper bag, the trial court announced that it would require the defendant's presence for identification purposes and the defendant then remained in the courtroom for the balance of the trial.

the evidence in closing argument or at any other time. Additionally, the trial court did not refer to the evidence in any of its instructions. Consequently, the improperly admitted evidence was not emphasized to the jury in any fashion. Therefore, although the evidence tended to prejudice the defendant and had little probative value, we conclude that its improper admission was harmless.

## D

Finally, we address whether the Appellate Court properly concluded that the introduction of the testimony concerning the defendant's wearing of the paper bag was not violative of the defendant's due process right to fundamental fairness.[10] We conclude that the Appellate Court correctly concluded that it was not.

Although we agree with the Appellate Court that the defendant failed to preserve this constitutional claim, the defendant may still prevail if he demonstrates: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail . . . ." *State* v. *Golding,* supra, 239–40; *State* v. *Niblack,* 220 Conn. 270, 278, 596 A.2d 407 (1991).

"The essence of due process is fundamental fairness. *United States ex rel. Crist* v. *Lane,* 745 F.2d 476, 482 (7th Cir. 1984), cert. denied, 471 U.S. 1068, 105 S. Ct. 2146, 85 L. Ed. 2d 503 (1985). Due process is an ele-

---

[10] Again, although the Appellate Court addressed only the defendant's claim regarding Alicea's testimony, our analysis also encompasses the evidence offered through Kenney.

ment that, when absent, produces [a reaction] which is 'shocking to the universal sense of justice.' *United States* v. *Russell,* 411 U.S. 423, 432, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973). Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. *Williams* v. *Bartlett,* 189 Conn. 471, 476, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983); *Lee* v. *Board of Education,* 181 Conn. 69, 73, 434 A.2d 333 (1980)." *In re Dodson,* 214 Conn. 344, 362–63, 572 A.2d 328, cert denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990).

Although we conclude that Kenney's testimony regarding the defendant's wearing of a paper bag should not have been admitted, we disagree that either its admission or the admission of Alicea's testimony can be characterized as shocking to the universal sense of justice. Accordingly, the defendant has not satisfied the third prong of the test set forth in *State* v. *Golding,* supra, and he may not prevail on this claim.

The judgment of the Appellate Court is affirmed.

In this opinion GLASS, COVELLO and BORDEN, Js., concurred.

BERDON, J., dissenting. This was a prosecution of the defendant for possession of cocaine with intent to sell. The trial court, over the timely and forceful objection of the defendant, allowed the police officer, Alicea, to testify as to the out-of-court statement of Navarro, a coarrestee in this incident, that the cocaine belonged to the defendant. The statement was extremely incriminating hearsay that went to the very heart of the case—whether the defendant possessed the cocaine.

The majority effectively ignores the defendant's claim under the sixth amendment to the United States con-

stitution,[1] when it concludes without authority or analysis that, because Navarro's incriminating statement was admissible, as an evidentiary matter, under the open door doctrine, its admission did not violate the defendant's constitutional right to confront his accusers.[2] This facile logic disregards United States Supreme Court precedent indicating that, even though a hearsay statement is admissible under an evidentiary exception, it is not necessarily admissible under the confrontation clause of the federal constitution. *California v. Green*, 399 U.S. 149, 155–56, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); see also 2 C. McCormick, Evidence (4th Ed.) § 252.

In *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), the United States Supreme Court noted that, although a literal reading of the sixth amendment would bar all hearsay, the clause was never so intended. "The historical evidence leaves little doubt, however, that the Clause was intended to exclude some hearsay . . . . Moreover, underlying policies support the same conclusion. The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that a primary interest secured by [the provision] is the right of cross-examination. In short, the clause envisions a personal

---

[1] Although the defendant also claims a violation of his right of confrontation under the state constitution, I limit my discussion to the federal constitution because he has failed to provide any meaningful analysis of the issue under the state constitution. *State v. Joly*, 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

[2] The only case cited by the majority in support of this proposition is *Sanville v. State*, 593 P.2d 1340, 1344 (Wyo. 1979). In a few sentences, the *Sanville* court concluded that evidence admitted under the open door doctrine did not violate the accused's right of confrontation. The court offered no reasoning whatsoever for its conclusion. Furthermore, it is interesting to note that the court that decided *Sanville* in 1979 did not have the benefit of the United States Supreme Court's 1980 decision on this subject in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 489 (1980). See discussion of *Roberts*, infra.

examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face-to-face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief . . . . These means of testing accuracy are so important that the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-finding process." (Citations omitted; internal quotation marks omitted.) Id., 63–64.

The United States Supreme Court recently enunciated a standard for analyzing whether the admission of hearsay evidence comports with an accused's sixth amendment right of confrontation. "Where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White* v. *Illinois,* 502 U.S. , 112 S. Ct. 736, 738, 116 L. Ed. 2d 848 (1992).[3] "The Court has applied this indicia of reliability requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the substance of the constitutional protection . . . . This reflects the truism that hearsay rules and the Confrontation Clause are generally designed to protect similar values . . . and stem from the same roots . . . . It also responds to the need for certainty in the workaday world of conducting criminal trials." (Citations omitted; internal quotation marks omitted.) *Ohio* v. *Roberts,* supra, 66.

[3] In *White* v. *Illinois,* 502 U.S. , 112 S. Ct. 736, 742, 116 L. Ed. 2d 848 (1992), the United States Supreme Court dispensed with the additional requirement, announced previously in *Ohio* v. *Roberts,* 448 U.S. 56, 63, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), that the hearsay declarant must be unavailable to testify. The government must still prove unavailability of the declarant, however, when it seeks to admit the evidence under a hearsay exception that requires that the declarant be unavailable to testify.

Navarro's incriminating statement did not have "sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule . . . ." *White* v. *Illinois,* supra, 738. The open door doctrine, which allows a party to introduce otherwise inadmissible evidence in order to put in proper context evidence offered by his or her opponent, is *not* an exception to the hearsay rule, firmly rooted or otherwise. Unlike an exception to the hearsay rule, which has been recognized precisely because it contains sufficient indicia of reliability, the open door doctrine provides no such guarantee of trustworthiness.

Indeed, Navarro's self-serving statement is the rankest sort of hearsay, containing no semblance of reliability. As this court has noted, "courts have failed to find sufficient indicia of trustworthiness surrounding inculpatory statements made against a codefendant by a third party in police custody, to warrant their admission." *State* v. *Boyd,* 214 Conn. 132, 139, 570 A.2d 1125 (1990). In such situations, there are " 'obvious motives for falsification—the very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, the enmity often generated in a conspiracy gone awry, the desire for revenge, all might lead an arrestee-declarant to misrepresent or to exaggerate the role of others in the criminal enterprise.' " Id., 140, quoting *United States* v. *Sarmiento-Perez,* 633 F.2d 1092, 1102 (5th Cir. 1981).

Even more importantly, Navarro's inculpatory and unreliable statement, if believed by the jury, assured the defendant's conviction. The open door doctrine simply cannot justify this invasion of the defendant's constitutional rights. He cannot be held to have opened the door so wide as to invite the state to trample on his constitutional right to confront his accusers.

I would reverse the judgment and order a new trial because the admission of Navarro's inculpatory state-

ment violated the defendant's sixth amendment right of confrontation. I therefore would not reach the other issues discussed in the majority opinion and do not necessarily endorse the majority's resolution of those issues.

I dissent.