IN RE JOSE M.*
(10975)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued December 2, 1992—decision released February 23, 1993

*Ramona S. Carlow,* special public defender, for the appellant (respondent).

*James A. Killen,* assistant state's attorney, with whom, on the brief, were *Francis J. Carino,* chief state's advocate, and *John H. Kearney,* state's advocate, for the appellee (petitioner).

O'CONNELL, J. The respondent appeals from an order of the Superior Court for Juvenile Matters at Waterbury transferring him to the regular criminal docket of the Superior Court pursuant to General Statutes § 46b-127.[1] The respondent claims that (1) the court improperly admitted several hearsay statements into

---

[1] General Statutes § 46b-127 provides in pertinent part: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. At such hearing, the child shall have the right to counsel and to confront the witnesses against him. The procedures provided in section 54-46a shall apply at such hearing, except that the child shall have the right to move to suppress any admission made by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery

evidence and (2) the evidence was insufficient to support the trial court's finding that there was probable cause to believe that he committed the crime of felony murder in violation of General Statutes § 53a-54c.[2] We affirm the order of the court transferring the respondent to the regular criminal docket.

The court found the following facts. On the evening of August 5, 1991, Jarrid Fiorello and Gerrod Ellis, after meeting with the respondent and two other acquaintances, Lennis and Vince, went by themselves to Fiorello's house and talked about robbing the deliveryman for a Chinese restaurant. The robbery was to take place that night at a vacant apartment located at 134 Stonefield Drive in Waterbury. While at the house, Fiorello gave Ellis a rifle, belonging to Fiorello's mother, to use in the robbery.

They left Fiorello's house with the rifle and, prior to reaching the apartment, were rejoined by the respondent and Lennis. After arriving at the apartment, they walked to another apartment where Ellis telephoned a food order to the Chinese restaurant and requested delivery at 134 Stonefield Drive. Vince, who was at the apartment while the call was made, accompanied them back to the vacant apartment.

---

of exculpatory information. An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age . . . ."

[2] General Statutes § 53a-54c provides in pertinent part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree . . . sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

While they waited for the deliveryman, Ellis assigned tasks to be performed during the robbery. The respondent was to take the deliveryman's car. In preparation for carrying out that assignment, the respondent went to the parking lot and waited. The deliveryman, Fai Yeung, arrived, exited his car and walked to the apartment with the order. Ellis confronted him and demanded the food and money. At the same time, the respondent attempted to take the car but was unsuccessful because the victim had apparently removed the keys. The victim started to run away but was shot by Ellis. The victim dropped the food and, in response to an order by Ellis, the respondent picked up the food and ran. The respondent brought the food to Ellis' house where they had all gathered after the robbery. Ellis and Vince then ate the food.

A police officer was dispatched to the scene, in response to a report of a man bleeding, and found the victim in his car. Although still conscious, the victim was weak and his chin kept falling to his chest. The officer asked him where he had been stabbed. The victim responded that he was not stabbed, but shot. The victim further stated twice, "[T]hey said give me the food or you're dead." The victim passed out and was transported to the hospital by ambulance. The officer followed a trail of blood from the victim's car to 134 Stonefield Drive. The victim died later that night at the hospital. The following day, the police recovered the rifle from Fiorello's house. Forensic testing established that the victim had been killed by that rifle and no other.

I

The respondent first claims that the court improperly admitted several hearsay statements made by Fiorello. General Statutes § 46b-127 requires that the procedures applicable to General Statutes § 54-46a

probable cause hearings, including the rules of evidence, apply to transfer hearings. Therefore, hearsay is not admissible at a § 46b-127 transfer hearing unless it comes within an exception to the hearsay rule.

A

The respondent argues that Fiorello's responses to two consecutive questions, regarding his initial conversation with Ellis about the robbery, were inadmissible hearsay. Fiorello testified that he and Ellis had a conversation at Fiorello's house. The state's advocate asked Fiorello, "What were you talking about?" The respondent objected that the answer would "elicit a response from the witness as to what [Ellis] said." The court overruled the objection after Fiorello responded affirmatively to the court's inquiry as to whether he could answer with just the subject matter of the conversation. The respondent took an exception and Fiorello then replied, "Just talked about robbing somebody."

The state's advocate next asked, "Can you tell me when this robbery was to take place?" The respondent objected "unless [the question] calls for what the witness' participation was in this particular conversation and not necessarily anything that Gerrod Ellis would say." The state's advocate rephrased the question, asking Fiorello, "[W]hat was your understanding of when this was to happen?" The respondent again objected, arguing that "a person's understanding . . . is a backward way of saying, did you say something, or did Gerrod Ellis say something. Clearly, if he wants to relate his side of the conversation then my objection should be overruled." The court cautioned Fiorello to answer without repeating what Ellis had said. Fiorello responded that the robbery was to take place that night.

The respondent argues that under *State* v. *Robinson*, 213 Conn. 243, 567 A.2d 1173 (1989), Fiorello's testi-

mony was inadmissible hearsay because it implicitly relayed to the court the substance of Ellis' words. In *Robinson,* a witness had begun to respond to the state's inquiry concerning her actions on a particular night by stating, " 'Well, I had gotten a call and,' " when she was cautioned by the state not to repeat anything said during the telephone conversation. Id., 257. The witness went on to explain that she had taken certain actions that night partially because she was concerned about the victim's safety. Id.

The state asked her why she was concerned and the defendant objected. Out of the presence of the jury, she explained that she was warned by the telephone caller that the victim was in danger. Id., 258. The trial court ruled that it would allow the testimony to show the witness' state of mind. Although the witness did not repeat the words stated by the caller, her testimony presented to the jury, by implication, the substance of the telephone conversation.

The Supreme Court held that the admission of the testimony was improper. Although the court noted that the testimony would not have been hearsay if offered to show its effect on the hearer, it recognized that the testimony was not relevant for that purpose. The probative value of the testimony was in the truth of the matter asserted and, for that purpose, it was inadmissible hearsay. Similarly, here, if the substance of the conversation was offered to prove that Fiorello and Ellis planned the robbery and was relevant for that purpose, it would be inadmissible hearsay. The conversation was not repeated verbatim by Fiorello but, nevertheless, his testimony expressly conveyed the substance of the conversation. As such, Fiorello's testimony, by implication, presented out-of-court statements that if offered as assertions or to prove the facts asserted would run afoul of the hearsay rule. See *State* v. *Hull,* 210 Conn. 481, 498, 566 A.2d 154 (1989).

The state argues, however, that the testimony was admissible, not as an assertion or for the truth of the matter asserted, but rather to explain Fiorello's subsequent course of action. In particular, the state reasons that the probative value of the conversation was "in the fact that both [Fiorello's and Ellis'] conduct and conversation at the house were in furtherance of a conspiracy that resulted in the crime for which the respondent is charged."[3] Despite the fact that the state did not expressly present this argument before the trial court, we are not "prevented from sustaining the ruling of a trial court on a basis other than that used." *State* v. *Lynch,* 21 Conn. App. 386, 393, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990).

The probative value of the testimony here is distinguishable from that in *Robinson.* In *Robinson,* the testimony informed the jury by implication that the telephone caller had warned the witness that the defendant intended to harm the victim. The testimony had probative value only as an assertion that the victim's life was in danger. *State* v. *Robinson,* supra, 259. In the present case, the probative value of the conversation rested not in the truth of any assertions made by Fiorello or Ellis, but rather, in its status as an act in furtherance of an enterprise that the trial court found was entered into by the respondent and culminated in the felony murder for which the respondent is charged.

The testimony, therefore, is not hearsay. See *State* v. *Gannon,* 75 Conn. 206, 216, 52 A. 727 (1902) (out-of-court statements made in furtherance of the con-

---

[3] Alternatively, the state claims that if the testimony was hearsay, it was admissible as a declaration by Fiorello or Ellis of a present intention to do an act in the near future. See *State* v. *Rinaldi,* 220 Conn. 345, 358 n.7, 599 A.2d 1 (1991); *State* v. *Journey,* 115 Conn. 344, 351, 161 A. 515 (1932). The issue in this case is the court's finding that there was probable cause to believe that the *respondent* had committed felony murder. Consequently, the evidence would not be relevant if offered for this reason.

spiracy by two of the three coconspirators were admissible, notwithstanding the coconspirator statement prerequisite that the state prove a prima facie case of conspiracy, because they were not declarations as to the existence of a conspiracy but were evidence of an agreement to accomplish the common purpose); *State v. Tolisano,* 136 Conn. 210, 214, 70 A.2d 118 (1949) (telephone calls were admissible as evidence that illegal bets had been placed, but not for the truth of any assertions made therein); *State v. Watley,* 195 Conn. 485, 490, 488 A.2d 1245 (1985) (the substance of a conversation is admissible nonhearsay to establish that the conversation had taken place); *State v. Miller,* 154 Conn. 622, 629, 228 A.2d 136 (1967) (testimony of the contents of a prior oral statement is admissible nonhearsay if offered through the person who made the statement and offered only to prove that it was made); *State v. Mortoro,* 157 Conn. 392, 396–97, 254 A.2d 574 (1969) (out-of-court statement was admissible as nonhearsay earwitness testimony to a verbal act); *Gyro Brass Mfg. Corporation v. United Automobile Workers,* 147 Conn. 76, 80, 157 A.2d 241 (1959) (testimony as to the content of a conversation was admissible as nonhearsay proof of an oral contract modification); *State v. Lewtan,* 5 Conn. App. 79, 84, 497 A.2d 60 (1985) (in harassment conviction, testimony as to obscene statements made by the defendant in telephone conversations was admissible nonhearsay to prove that the statements were made); see also, construing the Federal Rules of Evidence, *United States v. Hathaway,* 798 F.2d 902, 904–905 (6th Cir. 1986); *United States v. Whitman,* 771 F.2d 1348, 1351–52 (9th Cir. 1985); *United States v. Conn,* 769 F.2d 420, 422 (7th Cir. 1985); *United States v. Gaines,* 726 F. Sup. 1457 (E.D. Pa. 1989), aff'd, 902 F.2d 1562 (3d Cir.), cert. denied, 498 U.S. 844, 111 S. Ct. 128, 112 L. Ed. 2d 96 (1990).

Accordingly, because the implied utterances possessed significance irrespective of the truth of the matter asserted, they were properly admitted.

## B

The respondent next contends that Fiorello's responses to two questions concerning Ellis' assignment of jobs were inadmissible hearsay. The first challenged statement arose after Fiorello had testified that "Gerrod [Ellis] gave us things to do." The state's advocate then asked, "Okay, what was your thing to do?" The respondent objected, claiming that the question called for a response from Fiorello as to what Ellis had said. The court overruled the objection and Fiorello testified, "I was supposed to take the money." The respondent took an exception to the ruling.

The second challenged statement arose ten questions later when the state's advocate asked, "When [the victim] came, what happened?" Fiorello explained that the respondent was standing by the parking lot "because he was supposed to take the car." Fiorello went on to state that after the deliveryman had arrived, the respondent checked the car but did not find any keys. Fiorello further asserted that after the deliveryman had been shot, the respondent picked up the food and ran away.[4] The respondent neither objected to the question nor requested that the response be stricken.

---

[4] Fiorello's response in full is as follows: "Like all of us, like I told him that I wasn't going to take the money, so I walked to the woods and I waited there. And then [the respondent] was standing by the parking lot, because he was supposed to take the car. And then when the Chinese guy came, [the respondent] checked that there was no keys. [The respondent] was walking back. And while that was happening [Ellis] was telling the Chinese guy to give him the food and the money and stuff, and the Chinese guy started to run. So then when [the respondent] was walking back, he shot him. And he dropped the food and then [Ellis] started forcing [the respondent] to take the food and then [the respondent] took the food and he ran."

The respondent argues on appeal that the testimony was inadmissible because (1) the court failed to make the preliminary determination required under the coconspirator exception and (2) there was an insufficient evidentiary foundation to permit the admission of these statements under that exception. To the extent that the respondent's claim implicates Fiorello's second statement, describing the respondent's role in the robbery, it is not reviewable because the respondent did not object to the question or request that the answer be stricken. "Claims that were not distinctly raised at trial are not reviewable on appeal." *State* v. *Pickles,* 28 Conn. App. 283, 286–87, 610 A.2d 716 (1992). Consequently, the testimony became part of the evidence and was properly considered by the fact finder.[5] *State* v. *Hickey,* 23 Conn. App. 712, 718, 584 A.2d 473, cert. denied, 217 Conn. 809, 585 A.2d 1233, cert. denied, U.S. , 111 S. Ct. 2894, 115 L. Ed. 2d 1058 (1991).

Therefore, the only portion of the respondent's claim that is reviewable is Fiorello's first statement that his own job in the robbery was to take the money. We decline to reach this claim, however, because, even if improperly admitted, the testimony was not harmful. When, as is true here, an error in a criminal case does not involve a constitutional violation, "the burden is on the defendant to demonstrate the harmfulness of the court's error. The defendant must show that it is more probable than not that the erroneous action of

---

[5] In his reply brief, the respondent urges us to review this claim under the plain error doctrine pursuant to Practice Book § 4185. This doctrine "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). In the present case, we cannot say that the inclusion of this testimony constituted such a manifest injustice to the respondent so as to impair the effectiveness or integrity of the hearing. See id., 88. Accordingly, this claim does not warrant review under the plain error doctrine.

the court affected the result. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hoeplinger,* 27 Conn. App. 643, 649, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992); see also *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980).

The respondent cannot meet that burden. Fiorello's assertion that he was to take the money has no bearing on whether the respondent took part in the robbery. The respondent's involvement in the robbery was amply described by Fiorello's testimony both before and after this particular statement. Because this statement is not probative of the respondent's participation in the robbery, its admission could not have affected the result. Accordingly, the admission of the statement, whether improper or not, was not harmful.

## C

The respondent finally asserts that the victim's statement to the police officer that "they said give me the food or you're dead" was not admissible as a dying declaration either because (1) dying declarations, although admissible at a criminal trial, are not admissible at a transfer hearing because the hearing is not a criminal prosecution, or (2) the state failed to establish that the victim was conscious of his impending death. We will affirm the trial court's rulings unless there has been a clear abuse of discretion. *State* v. *Paulino,* 223 Conn. 461, 468, 613 A.2d 720 (1992).

A dying declaration is admissible in a criminal prosecution for the declarant's death if "(1) the declarant was conscious of impending death and (2) the statement concerns the cause of death or the circumstances surrounding the death." *State* v. *Onofrio,* 179 Conn. 23, 43–44, 425 A.2d 560 (1979). Although we agree that a § 46b-127 transfer hearing does not result in a determination of guilt; *In re Ralph M.,* 211 Conn. 289, 308–309, 559 A.2d 179 (1989); we do not agree that

the hearing is so far removed from a criminal prosecution that the dying declaration exception does not apply. Indeed, the transfer proceeding is the first step in the criminal prosecution of a juvenile as an adult.

Additionally, the express language of the statute further persuades us that a dying declaration is admissible at a transfer hearing. Following *In re Ralph M.,* supra, which held that hearsay was admissible in a transfer hearing, the legislature amended § 46b-127 to incorporate, with certain exceptions not relevant here, the procedures of § 54-46a governing probable cause hearings for persons charged with crimes punishable by death or life imprisonment.[6] Section 54-46a (b) provides that "[t]he court shall be confined to the rules of evidence . . . ." These include the rules governing the admissibility of hearsay. See, e.g., *State* v. *Boyd,* 214 Conn. 132, 570 A.2d 1125 (1990) (statement did not qualify as a statement against penal interest or as a statement admissible under the catch-all exception); *State* v. *John,* 210 Conn. 652, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989) (statements were admissible to show their effect on the hearer).

Because § 54-46a is part of title 54 which governs criminal procedure, it is evident that a hearsay rule that is limited to criminal prosecutions, such as the dying declaration exception, applies to a § 54-46a hearing. Consequently, because the procedures of § 54-46a have been incorporated into § 46b-127, the dying declaration exception to the hearsay rule is similarly applicable to § 46b-127 proceedings.[7]

---

[6] Public Acts 1990, No. 90-136, § 2.

[7] We note that the respondent's contention would produce an untenable and bizarre result. While the dying declaration could be relied upon at trial where due process and confrontational rights are afforded the most protection, it could not be relied upon at the probable cause hearing which is necessary to initiate the prosecution. We decline to endorse such a result.

The defendant's second premise, that the state failed to prove that the victim was conscious of his impending death, is likewise without merit. Although it is true that consciousness of death must be demonstrated, "[t]here is no talismanic ritual of words that must be spoken by a dying declarant" to render the statements admissible. *State* v. *Onofrio,* supra, 45. "[T]he declarant's consciousness of despair over impending death may be proved by the circumstances surrounding the declaration as well as by the statements themselves." Id., 44–45; see annot., 53 A.L.R.3d 1196.

In the present case, the victim had been mortally wounded and had left a trail of blood from the robbery scene to his car. When the police officer spoke to the victim, he was bleeding severely and growing weaker. The victim could not keep his head up and was yelling in pain. The officer testified that the victim made the statement just seconds before passing out. There is no indication that the victim ever regained consciousness. Although there were no specific words spoken by the declarant to indicate his consciousness of despair over impending death, in light of the circumstances surrounding the declaration, we conclude that the court acted within its discretion in admitting the victim's statement.

## II

The respondent next claims that the evidence at the hearing did not support the trial court's finding of probable cause. "On appeal, our function is to determine whether the trial court's decision that probable cause existed was clearly erroneous." *In re Ernest B.,* 29 Conn. App. 573, 575, 617 A.2d 903 (1992); *In re Keijam T.,* 221 Conn. 109, 116, 602 A.2d 967 (1992). "The quantum of evidence necessary to establish probable cause at a preliminary hearing is less than the quantum necessary to establish proof beyond a reasonable

doubt at trial. . . . In making its finding, the court had to determine whether the government's evidence would warrant a person of reasonable caution to believe that the accused [had] committed the crime. . . . The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction." (Citations omitted; internal quotation marks omitted.) *In re Keijam T.,* supra, 115–16. "Proof of probable cause is not as demanding as proof by a fair preponderance of the evidence . . . ." (Citations omitted.) Id., 125. "Moreover, in viewing [the] evidence and the permissible inferences drawn from it to determine whether the decision was clearly erroneous, we do so in the light most favorable to sustaining the trial court's determination of probable cause." (Internal quotation marks omitted.) *In re Ernest B.,* supra.

In the present case, our review of the record, including the court's carefully detailed factual findings, which we have summarized in this opinion, satisfies us that the trial court's decision ordering the transfer was not clearly erroneous. The factual findings were sufficient to support the court's conclusion that "there is probable cause that the respondent, Jose M., acting with other persons, committed or attempted to commit robbery, and in the course of and in furtherance of the robbery, a participant in the robbery caused the death of a person other than one of the participants."

The order of transfer is affirmed.

In this opinion the other judges concurred.