FIDELE J. SAVOIE, EXECUTOR (ESTATE OF
HUBERTE MARIE SAVOIE), ET AL. *v.*
IBRAHIM M. DAOUD ET AL.
(AC 26941)

DiPentima, Gruendel and Rogers, Js.

Argued January 17—officially released May 1, 2007

*Kathleen L. Nastri*, with whom, on the brief, was *Neal A. De Young*, for the appellants (substitute plaintiff Amy S. Luby et al.).

*Eugene A. Cooney*, with whom, on the brief, was *Lorinda S. Coon*, for the appellee (named defendant).

*Opinion*

ROGERS, J. The plaintiff Fidele J. Savoie,[1] executor of the estate of his deceased wife, Huberte Marie Savoie (plaintiff's decedent), brought this action for medical malpractice, and individually for loss of consortium, against the defendant Ibrahim M. Daoud, a general surgeon.[2] The plaintiff appeals from the trial court's judgment in favor of the defendant, rendered after a jury verdict. The issue on appeal is whether the court improperly charged the jury on the doctrine of schools of thought regarding the proper standard of care. Specifically, the plaintiff argues that (1) the court acted improperly by charging the jury regarding schools of thought when there was no evidence of the existence of two schools of thought, and (2) the court improperly marshaled evidence in its charge to the jury. We disagree and, accordingly, affirm the judgment of the trial court.

---

[1] Fidele J. Savoie died on June 1, 2006. On September 11, 2006, the plaintiff's attorney filed a motion to substitute party plaintiff, requesting permission to substitute Amy S. Luby and Suzan Savoie-Swist, the executrices of Fidele J. Savoie's estate, for Fidele J. Savoie in his individual capacity, and to substitute Suzan Savoie-Swist, the coexecutrix of Huberte Marie Savoie's estate, for Fidele J. Savoie in his capacity as the executor of Huberte Marie Savoie's estate. We granted the motion on September 28, 2006. For clarity, we refer in this opinion to Fidele J. Savoie as the plaintiff.

[2] Initially, the action also was brought against Saint Francis Hospital and Medical Center, but the action was later withdrawn with respect to that defendant. We refer in this opinion to Daoud as the defendant.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the plaintiff's appeal. In January, 1999, the plaintiff's decedent went to the defendant at the recommendation of her gynecologist for surgical repair of a ventral hernia.[3] On February 8, 1999, the defendant performed a laparoscopic ventral hernia repair.[4] During the course of this surgery, the defendant discovered adhesions, or scar tissue, between the intestines of the plaintiff's decedent, and a marlex mesh, which had been used to patch her abdominal wall during a prior hernia repair. The mesh had adhered to the abdominal wall and bowel of the plaintiff's decedent. Before he could repair the hernia, the defendant lysed or cut through the adhesions and cut away the mesh from the abdominal wall. During the surgery, the defendant made an effort to cut away the bowel from the mesh but determined that doing so was not safe. The defendant instead decided to cut around the area where the mesh was attached to the bowel and release the bowel from the abdominal wall with a piece of mesh still attached to the bowel. The defendant continued the hernia repair using a new mesh to patch the abdominal wall defect.

The plaintiff's decedent was discharged from the hospital later that day. Over the course of the following days, the plaintiff's decedent became increasingly septic from the effects of an intestinal perforation. On February 12, 1999, the plaintiff's decedent was in great pain, and the plaintiff contacted the defendant. The defendant instructed the plaintiff's decedent to go to

[3] The plaintiff's expert witness, Thomas Gouge, a general surgeon, testified that a ventral hernia is a break in the abdominal wall through which abdominal organs protrude.

[4] Gouge testified that laparoscopic hernia repair is a minimally invasive surgery of the abdomen performed by making a number of small incisions in the patient's abdomen through which scopes, cameras and instruments are placed. It is contrasted with open abdominal surgery, which involves large incisions through the abdominal wall.

the emergency room, where he met her and took her to the operating room. During a second surgery, the defendant discovered the bowel perforation and resected[5] the injured portion of the bowel. The plaintiff's decedent spent the next several weeks in the hospital. She did not recover from the effects of the septic shock and died on March 31, 1999.

At trial, the parties' expert witnesses agreed that in a surgery such as that performed on the plaintiff's decedent, a careful inspection of the bowel is necessary, but they disagreed with respect to whether the standard of care required removal of all existing mesh adherent to the bowel. The defendant and his expert witness, Todd Henniford, a general surgeon, testified that leaving an existing piece of mesh attached to the bowel meets the standard of care. Henniford testified that when existing mesh becomes densely adherent to the bowel, it is impossible to separate the two without leaving some bowel on the mesh or some mesh on the bowel. He testified that he has performed approximately 600 ventral hernia repairs in his career, with approximately 400 of them laparoscopic, and that in the course of teaching other surgeons, he has encountered this question numerous times. He also testified that the complication is described numerous times in the medical literature. When this complication occurs, he testified, it is appropriate for surgeons first to attempt to remove the existing mesh. If the mesh cannot be removed, he explained further, then leaving the mesh on the bowel is preferable to the alternative of resecting the portion of the bowel adherent to the mesh because of the risks attendant to such a bowel resection and the loss of the ability to perform the hernia repair for many months.

---

[5] "Resect" is defined as "to perform a resection; cut off or away." American Heritage Dictionary of the English Language (New College Ed. 1981). "Resection" is defined as "the surgical removal of part of an organ or structure." Id.

The plaintiff's expert witness, Thomas Gouge, a general surgeon, disagreed with the defendant and his expert and, instead, expressed his opinion that the defendant failed to meet the standard of care by leaving a piece of mesh in the abdomen of the plaintiff's decedent attached to the bowel. Gouge reasoned that a surgeon needs to do whatever is necessary in order to remove the existing mesh in all cases because of the need to inspect the bowel for perforations. On cross-examination, Gouge agreed that there are two schools of thought with respect to whether it is safe and acceptable to leave a piece of mesh attached to the bowel.[6] This testimony came into evidence without objection. On redirect examination, the plaintiff's counsel continued the line of questioning regarding the "schools of thought" terminology, specifically asking the following:

"[The Plaintiff's Counsel]: You agreed with [the defendant's attorney], Dr. Gouge, that there are two schools of thought with respect to leaving marlex mesh in place after this kind of surgery?

"[The Witness]: Yes, ma'am. . . .

---

[6] Specifically, the following testimony was elicited from Gouge on cross-examination:

"[The Defendant's Counsel]: Doctor, since the time you formed your opinion in this case on whether it is safe to leave an old piece of marlex mesh attached as [the defendant] did in this case, since the time you formed your opinions, you have learned through reading other depositions in this case that other doctors disagree with your opinion?

"[The Witness]: Yes, sir.

"[The Defendant's Counsel]: And would you agree with me that there are two schools of thought in this country on this issue of whether it's safe and acceptable to leave an old piece of marlex mesh in the patient attached to the bowel?

"[The Witness]: Yes, sir, I would. There is no solid evidence one way or the other. There is anecdotal experience in both directions.

"[The Defendant's Counsel]: But you respect the fact that . . . there are at least two schools of thought on the issue. Fair enough?

"[The Witness]: Yes, sir, and that there—it is that, yes, I'll just agree with you, sir."

"[The Plaintiff's Counsel]: Are you aware of whether or not the defense experts in this case will have the opposite school of thought? . . .

"[The Witness]: Yes, I'm aware that they're going to hold that opinion.

"[The Plaintiff's Counsel]: Can you tell us whether or not, Dr. Gouge, there are any differences in schools of thought regarding the standard of care for being able to inspect the intestine?

"[The Witness]: No, ma'am."

The defendant requested a jury charge on schools of thought, and the court so instructed the jury. Specifically, the court instructed: "In this case, it is my recollection—and again, it's your recollection that controls—it is my recollection that there was some testimony by Dr. Gouge that there may be two schools of thought on whether a previously installed mesh, which has adhered to the small bowel, must be completely removed from the bowel or be allowed to remain attached to the bowel when making a subsequent hernia repair. Whether two schools of thought on this subject exist and whether the defendant's course of treatment comported with the standard of care is for you to determine after consideration of all the evidence in the case. As long as the defendant met the standard of care according to one school of thought rather than the other, he incurred no liability simply because that choice led to the unfortunate outcome of the death of the [plaintiff's decedent]." The plaintiff took an exception to the charge.

The jury returned a verdict in favor of the defendant. Thereafter, the plaintiff filed a motion to set aside the verdict. The court denied the plaintiff's motion and rendered judgment in accordance with the jury verdict. This appeal followed.

I

The plaintiff first claims that the court acted improperly by charging the jury regarding schools of thought. Specifically, the plaintiff claims that the record provided no support for the charge because there was no evidence of the existence of two schools of thought pertaining to mesh removal, and the charge regarding mesh removal allowed the jury to disregard the real standard of care issue at trial, namely, careful inspection of the bowel during a hernia surgery. We are not persuaded.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *MoKonnen* v. *Pro Park, Inc.*, 96 Conn. App. 625, 629, 901 A.2d 725, cert. denied, 280 Conn. 924, 908 A.2d 1088 (2006).

The plaintiff argues that the charge was improper because the court misinterpreted the medical issue in contention at trial. The plaintiff avers that the school of thought charge regarding the removal of mesh improperly directed the jury away from his real claim of negligence, which was not that the defendant negligently failed to remove the mesh but, rather, that he failed to inspect the intestine of the plaintiff's decedent

adequately after surgery. We do not agree with the plaintiff's characterization of the standard of care issue at trial.

The central surgical issue at trial was whether the defendant improperly dissected the mesh. The plaintiff did not allege in his complaint that the defendant deviated from the standard of care in failing to inspect the bowel properly but, rather, claimed in paragraph 5e of the amended complaint that there was an improper dissection[7] of the marlex mesh. In addition, the central focus of Gouge's testimony was the duty to remove all of the old mesh. When the plaintiff first asked Gouge to express his opinions, he stated: "what in my opinion does not meet the standard of care, what he did that was not correct is leaving this foreign body, this piece of mesh, in the abdomen attached to the intestine." Gouge repeated several times throughout his testimony his opinion that the standard of care requires the removal of existing adherent mesh and presented the need for inspection as a basis for his opinion.[8] During

---

[7] "Dissection" is defined as "the act of dissecting." American Heritage Dictionary of the English Language (New College Ed. 1981). "Dissect" is defined as "to cut apart or separate. . . ." Id.

[8] For example, the following testimony was elicited from Gouge by the plaintiff on direct examination:

"[The Plaintiff's Counsel]: . . . Do you have an opinion to a reasonable degree of medical probability as to whether or not [the defendant] complied with the standard of care applicable to general surgeons in the performance of the laparoscopic ventral hernia repair on February 8, 1999? . . .

"[The Witness]: That he did not, did not within a reasonable degree of medical probability meet the standard of care expected of a general surgeon performing a laparoscopic, recurrent ventral hernia repair. In the manner in which he dissected the mesh and in the manner of that dissection, leaving the mesh in the abdomen attached to the intestine, both by just leaving the mesh and because of that fact having that two inch by seven or eight inch piece of mesh with fat on the top of it in there prevented him from adequately inspecting the intestine that he had been working on in doing that surgery.

* * *

"[The Plaintiff's Counsel]: And why is it a breach in the standard of care to leave the mesh and the fat on the intestine?

"[The Witness]: Because you can't see the intestine underneath, and you can't see whether there was a problem with the intestine to start off with

closing arguments, the plaintiff's counsel argued to the jury that "common sense should lead you to conclude that [the defendant] breached the standard of care in two respects, failure to return the phone call on [February 10, 1999],[9] and the manner in which he dissected the mesh during the February 8 procedure." The only surgical issue that went to the jury was whether the defendant "improperly dissected the marlex mesh." We are not persuaded by the plaintiff's effort to reinterpret the standard of care issue tried. We review a case on the theory on which it was tried in the trial court.[10] *Haigh* v. *Haigh*, 50 Conn. App. 456, 459 n.3, 717 A.2d 837 (1998).

Gouge's testimony provided an adequate foundation for the schools of thought charge. He testified on cross-examination and redirect examination that there were two schools of thought on the issue of whether it is safe and acceptable to leave adherent mesh on the bowel. The defendant's counsel asked Gouge on cross-examination: "[W]ould you agree with me that there are two schools of thought in this country on the issue of whether it's safe and acceptable to leave an old piece of marlex mesh in the patient attached to the bowel?" Gouge responded: "Yes, sir, I would. There is no solid evidence one way or the other. There is anecdotal experience in both directions." Instead of objecting to the

that you have now opened up by taking this down. You can't tell whether you injured the intestine in your initial dissection by trying to pull it away from the mesh, and you can't tell whether the instruments that you've used to cut through the fat have caused, by heating the fat up, some injury to the intestine below the mesh."

[9] The plaintiff also alleged in his complaint that the defendant failed to return his telephone calls, thereby delaying diagnosis of the decedent's bowel perforation. This claim is not at issue on appeal.

[10] Over the defendant's objection, the court permitted Gouge to testify regarding improper inspection of the bowel, reasoning that the testimony came within paragraph 5e of the compliant. Although the experts did not dispute that careful inspection of the bowel is necessary, the central surgical issue on which the experts disagreed was whether all adherent mesh needed to be removed from the bowel in order to comply with the standard of care.

adequacy of the foundation for the question when it was asked by the defendant's counsel, the plaintiff's counsel chose to allow the answer and to continue with the "schools of thought" terminology in her questioning.

The plaintiff's counsel specifically asked whether there are two schools of thought with respect to leaving existing mesh in place after this kind of surgery, to which Gouge answered affirmatively. The plaintiff contends that the charge was improper because evidence concerning the principles and practices of schools of thought pertaining to mesh removal was lacking.[11] Whether or not there was an underlying basis at that time for Gouge's testimony, the plaintiff did not object, and, consequently, his express unchallenged statement became part of the evidence, and the trier of fact was free to use that testimony for whatever it deemed its worth. See *State* v. *Jeffreys*, 78 Conn. App. 659, 677–81, 829 A.2d 569 (single unchallenged, affirmative statement that subject apartment complex was public housing project sufficient to support defendant's conviction of possession of narcotics with intent to sell within 1500 feet of public housing project where defendant failed to object to testimony, cross-examine witness on issue or request offer of proof as to witness' qualifications to testify to such), cert. denied, 266 Conn. 913,

---

[11] The schools of thought doctrine involves recognized and established schools of medical thought that maintain their own "established rules and principles of practice for the guidance of all [their] members . . . ." (Internal quotation marks omitted.) *Wasfi* v. *Chaddha*, 218 Conn. 200, 208, 588 A.2d 204 (1991). Any argument by the plaintiff that Gouge was using the term "schools of thought" in a manner different from the way it is used in Connecticut case law and that, consequently, there was no evidentiary foundation for the jury charge is unavailing. The plaintiff used the term "schools of thought" on redirect examination but did not give any indication that the term was being used in a manner different from how it is used in Connecticut case law. Additionally, Gouge did not give any indication of confusion as to the terminology. The record does not provide any basis that the term was used in a manner different from the way it is recognized under Connecticut case law.

833 A.2d 465 (2003); *In re Jose M.*, 30 Conn. App. 381, 390, 620 A.2d 804 (testimony became part of evidence and properly considered by fact finder where respondent failed to object to question or request answer be stricken despite claim on appeal of insufficient evidentiary foundation to permit admission of hearsay statements under coconspirator exception to hearsay rule), cert. denied, 225 Conn. 921, 625 A.2d 821 (1993).

The plaintiff's counsel not only made the tactical decision not to object to the schools of thought testimony but also elicited from the plaintiff's own witness on redirect examination an affirmation of the witness' conclusion that there were two schools of thought on the subject of mesh removal. Gouge's unchallenged ultimate conclusion concerning the existence of two schools of thought stated on cross-examination and on redirect examination provided an adequate basis for the charge. "[A] trial court should instruct a jury on [every] issue for which there is any foundation in the evidence, even if weak or incredible." (Internal quotation marks omitted.) *Bonan* v. *Goldring Home Inspections, Inc.*, 68 Conn. App. 862, 867, 794 A.2d 997 (2002).

II

The plaintiff next claims that the court improperly marshaled evidence in its charge to the jury. Specifically, the plaintiff argues that the court misled the jury when it pointed out in its charge that Gouge had testified that there were two schools of thought with respect to leaving a piece of adherent mesh on the bowel. We disagree.

"The matter of commenting on evidence rests in a trial court's sound discretion. . . . Although a trial court has not only the right, but often the duty to comment on the evidence . . . [a] court's review of the evidence in its charge to the jury is subject to the overriding consideration that its comments be fair and that

they not mislead the jury, so that injustice is not done to either party. . . . The nature and extent of a court's comments depends largely on the facts of a case and the manner in which it was tried. . . . It is the duty of the trial judge, in submitting the law and the facts to the consideration of a jury, to refer to the testimony so far as may be necessary to assist the jury to a clear apprehension of the relation of the testimony, whose credibility [it] must determine, to the material facts [it] must decide . . . . It is evident that whenever this duty is well done, the charge must to some extent uncover the weakness of a weak case, the difficulties of a difficult case, or the strength of a strong case." (Citations omitted; internal quotation marks omitted.) *Felsted* v. *Kimberly Auto Services, Inc.*, 25 Conn. App. 665, 669, 596 A.2d 14, cert. denied, 220 Conn. 922, 597 A.2d 342 (1991).

When giving the charge on schools of thought, the court instructed: "In this case, it is my recollection—and again, it's your recollection that controls—it is my recollection that there was some testimony by Dr. Gouge that there may be two schools of thought on whether a previously installed mesh, which has adhered to the small bowel, must be completely removed from the bowel or be allowed to remain attached to the bowel when making a subsequent hernia repair." The court's reference to Gouge's testimony was an accurate account of the evidence. In response to questions on cross-examination and redirect examination, Gouge testified that there are two schools of thought concerning the removal of adherent mesh.

In addition, the court prefaced its remark with a reminder to the jurors that their recollection controls. The jurors already had been instructed that they were the sole judges of the facts. Prior to giving the schools of thought charge, the court specifically instructed: "Now, if I refer to any of the evidence in this charge,

and I will do so, it will be simply for purposes of illustration and clarification, and you are not to understand that I intend to emphasize any evidence I mention or limit your consideration to that evidence alone. If I omit reference to any evidence, you will supply it from your own recollection. If I incorrectly state any of the evidence, you will correct my error because it is your province to review the evidence and determine the facts established by it." After a thorough review of the testimony and the court's charge, we conclude that the charge was reasonable and fair and within the limits of the court's broad discretion.

The judgment is affirmed.

In this opinion the other judges concurred.